1  (Counsel for Plaintiffs listed

2  on following page)

BY
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
2011 SEP 21 PM 3: 04
FILED

8  # UNITED STATES DISTRICT COURT

9  ## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  ## SOUTHERN DIVISION

| | |
|---|---|
| YUCKMING CHIU, individual California resident, on behalf of himself and all others similarly situated, | Case No.: SACV11-01121-DOC-RNBx |
| | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| Plaintiff | 1. **Failure to Pay Overtime Wages (Labor Code §§ 204, 510, 1194);** |
| | 2. **Failure to Timely Pay Wages at Separation (Labor Code §§ 201-203);** |
| vs. | 3. **Failure to Furnish Itemized Wage Statements (Labor Code § 226);** |
| CITRIX SYSTEMS, INC., a Delaware corporation, | 4. **Unfair Business Practices (Bus. & Prof. Code §§ 17200 et seq.)** |
| | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

1

2  Jose R. Garay, Esq., SBN 200494
   jgaray@garaylaw.com
3  Briana M. Kim, Esq., SBN 255966
   bkim@garaylaw.com
4
   **JOSE GARAY, APLC**
5  9900 Irvine Center Drive
   Irvine, California 92618
6  Telephone: (949) 208-3400
   Fax:   (949) 713-0432
7

8
   Christopher J. Hamner, Esq., SBN 197117
9  chamner@hamnerlaw.com
   **HAMNER LAW OFFICES, LP**
10 555 W. 5th Street, 31st Floor
   Los Angeles, California 90013
11 Telephone:  (213) 533-4160
   Fax:   (213) 533-4159
12

13
   MICHAEL L. TRACY, Cal. Bar No. 237779
14 mtracy@michaeltracylaw.com
   **Law Offices of Michael L. Tracy**
15 2030 Main Street, Suite 1300
   Irvine, CA  92614
16 Telephone:  (949) 260-9171
   Fax:   (866) 365-3051
17

18

19

20 Attorneys for Plaintiff, YUCKMING CHIU, on behalf of
   himself and all others similarly situated
21

22

23

24

25

26

27

28

1    Plaintiff, YUCKMING CHIU, alleges, on behalf of himself and classes of those

2    similarly situated, as follows:

## I.

## JURISDICTION AND VENUE

6    1.      This Court has original jurisdiction over the subject matter of

7    this action pursuant to 28 U.S.C. §1332. The court has supplemental jurisdiction

8    over the state law claims pursuant to 28 U.S.C. §1367.

9    2.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a)

10   and (b) because Defendants maintain offices, have agents, are licensed to transact

11   and do transact business, in this district.

## II.

## PARTIES

14   3.      Plaintiff Yuckming Chiu ("Plaintiff" or "CHIU") is a resident

15   and citizen of California.  Many of the acts complained of occurred in Orange

16   County and gave rise to the claims alleged herein.

17   4.      Defendant CITRIX SYSTEMS, INC. (hereinafter

18   "Defendant(s)" or "CITRIX") is a Delaware Corporation with its principal place of

19   business in Florida.  CITRIX is and has been doing business in California.

20   CITRIX is not a citizen of California.

## III.

## SUMMARY OF CLAIMS

24   5.      This is an action by and on behalf of current and former

25   employees of CITRIX SYSTEMS, INC., a Delaware Corporation (hereinafter

26   "Defendant(s)" or "CITRIX"), who are or were employed in Defendants' location

27   in California and held titles or positions as software engineers, or similar titles.

28

6. Plaintiff and the class he seeks to represent were misclassified and are owed overtime and other remedies under California law (hereinafter, the "CLASS").

7. Such jobs, titles, and positions were categorically defined as software engineers or similar titles.

8. As such, CITRIX did not satisfy the legally required minimum to unilaterally designate this CLASS of employees as exempt from overtime. These job titles were, are, and continue to be misnomers, because the majority of the work performed by this class of employees is not, and was not, exempt in nature.

9. The CLASS was engaged in duties that did not involve design, development, documentation, analysis, creation, testing, or modification design, that was creative or intellectual in nature.

10. The primary duties of the CLASS consisted of routine, rote, and repetitive non-exempt manufacturing and testing procedures requiring supervision and micro-management.

11. While these employees rely(ied) on their education, training, skill and experience to do their jobs, they are subject to considerable constraint and supervision, must obtain approval to complete basic job tasks, and regularly deploy rigid and institutional fixes rather than engage in original/creative thought in the production of CITRIX computer products and related products.

12. The culmination of each of these factors demonstrates that none of the employees in the class definition fall into any of the recognized exemptions. They are trouble-shooting and production driven workers who have wrongfully been deprived of premium compensation for hours worked in excess of eight (8) hours per day or forty (40) hours per week throughout the relevant class period.

13.     CITRIX characterizes its engineering job family into a multitude of different job classifications which perform essentially the same duties or overlap significantly in their duties.

14.     CITRIX groups all of the CLASS jobs into the category of "Product Development/Engineering."

15.     CITRIX groups all the job titles into the "Product Development/Engineering" category because they perform substantially the same job duties.

16.     CITRIX classes other job titles with different job duties into different categories.  CITRIX refers to these categories as "Functional Areas" because the jobs functions for each category are so similar.

17.     CITRIX uses the Functional Area of "Executive" for executive level positions that are completely different from the Class Members.

18.     CITRIX uses the Functional Area of "Administration" for administrative positions that are completely different from the Class Members.

19.     CITRIX uses the Functional Area of "Product Design" for positions that actually design the hardware and software.  Class Members are not in this Function Area because they do not perform the design.

20.     Class Members are also not in the "Executive" or "Administration" Functional Areas because they are not performing any significant executive or administrative duties.  CITRIX classified the Class Members outside these positions because CITRIX is well aware that Class Members are not performing these types of duties.

21.     CITRIX has records that show which "Functional Area" each employee is working in, and these records can be used to determine the Class.

22.     Within the "Product Development/Engineering" Functional Area, the employees all perform routine duties of developing products according to

1   detailed specifications provided by others or testing the system according to

2   routine parameters that are also established by other individuals.

3        23.        Examples of these routine tasks found in CITRIX's own job

4   descriptions for these positions include:

5        a.  Performs tasks involving set up, troubleshooting and debugging

6             physical or virtual machines

7        b.  Applies best practices to complete assignments and ensure quality

8             output.

9        c.  Coordinates own activities on routine work [Note that CITRIX's own

10            job descriptions describe this work as "routine"]

11       d.  Drive improved scalability and reliability of our products through

12            stress, scalability and performance testing.

13       e.  Create new automated tests to target new features and products.

14       f.  Locate and troubleshoot potential problem areas utilizing MSI/MSP

15            logs and debuggers.

16       g.  Analyze and resolve problems with Traffic Management

17            products.[Note, this is nothing more than routine debugging.]

18       h.  You will optimize traffic over wide area networks so speed them up.

19            This requires a knowledge of TCP level optimization.

20       i.  install Citrix software product releases utilizing networking protocols.

21       j.  coding, code review, troubleshooting and debugging, status reporting,

22            packaging, installation, documentation, building, life cycle

23            maintenance, and testing.

24       k.  Locate and troubleshoot potential problem areas utilizing logs and

25            debuggers, configure complex installations and quickly resolve all

26            defects found within the installation.

27

28

l.  In this Software Development Engineer in Test role, you will Test production software of moderate complexity to ensure quality through the use of systematic tests from QA through release. [Note that CITRIX's own job description describes the testing as "systematic."]

m. Performs tasks of limited scope involving programming/coding, troubleshooting and testing of software components.  [Note that CITRIX admits that these positions have a very "limited scope" of responsibility.]

n.  Performs preliminary tests to verify the functionality, accuracy, and efficiency of developed or enhanced software.

o.  Work on user reported problems dealing with both the Escalation as well as Development Teams.

24.     The above samples from actual CITRIX job descriptions all describe routine software development or testing tasks.

25.     CITRIX sometimes lists "design work" in the job descriptions of these positions, but this is merely an exaggeration.  For instance, one job description lists "Participate in all phases of the software development and release cycle that include design, coding, code reviews, troubleshooting and debugging, installation, software maintenance, and testing."  However, this job title (Sr. Software Maintenance Engineer) does not perform any design work.  The position only "participates" in the design by looking at the design produced by others and making sure that the code and tests comply with the exact specification provided.

26.     Routine software development is commonly known as "code to spec." This phrase describes the process whereby a "spec" or specification for the software is developed by the designer and then a programmer writes the code according to the exact specification of the designer.

27.     The Class Members engaged in routine "code to spec" functions as well as systematic and routine testing of the same software to make sure it complied with the specification.

28.     Computer programmers who perform routine "code to spec" job duties are commonly referred to as "code monkeys."

29.     The phrase "code monkey" refers to a computer programmer who does routine coding according to the specifications of others.

30.     Plaintiff is informed and believes that CITRIX employees referred to the routine positions of the Class as "code monkeys."

31.     Software engineers' and related titles' functions and daily tasks focus on routine and repetitive tasks that primarily include standardized configuration, routine troubleshooting, automated debugging, and systematic manufacturing and testing of products within industry standards and/or CITRIX's pre-defined parameters.   Furthermore, there is a litany of job duties and functions that are significantly devoid of the exercise of discretion and/or independent judgment.   CITRIX employs a system of categorization and titles purely for promotion and pay grade purposes.

32.     CITRIX also requires that all code developed be reviewed in "code reviews," and all the Class Members are subject to this constant supervision of all of the work that they perform.

33.     CITRIX has records of these code reviews and the records all clearly show that Class Members were highly supervised and performing routine work.

34.     These employees thus are and were entitled to overtime and other protections as non-exempt employees. It is *Defendant's burden* of pleading, evidence and proof to show that these employees are and were exempt under California wage and hour law.   These employees have spent an insignificant

amount of work time doing anything that constitutes "exempt," and for that reason and others, they are and always have been entitled to overtime pay and non-exempt treatment under California wage and hour law.

35.     Plaintiff's duties and those of the CLASS he seeks to represent were routine in nature and relied on the use of templates and other automated processes.  The actual job duties are limited to performing routine production work, not requiring special expertise, and involving little or no exercise of discretion.

36.     Plaintiff's work hours and those of the CLASS increased dramatically in the last few years as a direct result of CITRIX's refusal to hire sufficient manpower, which has strained labor output to the detriment of the proposed class and subclasses.  As such, CLASS members were required to work above average overtime in primarily non-exempt duties during the transition period when CITRIX purchased NetScaler in or around early 2006.  Plaintiff alleges, on information and belief, that overtime requirements subsequent to CITRIX's buy-out required, and require, proposed class members to work substantial overtime hours.

37.     Because all the work of Class Members is heavily supervised and controlled, electronic records exist that document not only the work performed but also the time spent performing it.

38.     For instance, every time a Class Member makes a change to a piece of software, the change is then "check-in" to a version control system.  The version control system tracks who made the change, exactly what was changed, and what time the change was made.  In addition, the person making the change is supposed to document why the change was being made.

39.     Similarly, for the routine tests that were performed, electronic records exist to show why a test was run, which function it was testing, and the result of the test.

40.     These electronic records exist for all the Class Members is the same or substantially similar format and can be used to re-construct not only the job duties being performed but a reasonable estimate of the actual hours worked.

41.     CITRIX has access to all these electronic records and is well aware that they contain information that can be used to re-construct the hours worked and job duties performed by these employees.

42.     CITRIX also possess design documents, project plans, requirements lists, tasks, defect logs, and test plans that describe the work performed by various individuals.  These documents will show that individuals other than Class Members performed the high level project management and design of the systems and that Class Members were performing the routine tasks assigned to them.  For instance, these records show who assigned each task to each individual to work on.  As such, it can easily be seen who the managers were and that these individuals are not part of the class.

43.     Plaintiff is a former CITRIX employee whose primary duties were non-exempt and who was misclassified by CITRIX as exempt from the overtime provisions of the applicable state wage and hour laws of California, as described in this complaint.

44.     Plaintiff held the title of software engineer and was misclassified in the performance of his primary duties under that title.  During his tenure with CITRIX, he performed routine system testing and development on CITRIX products throughout their manufacturing life cycle , ensured that CITRIX products achieved industry standards and/or CITRIX's pre-defined parameters

1  regarding manufacturability and quality, and deployed institutional fixes in the
2  production of CITRIX computer products, and related products.

3     45.     Plaintiff performed duties of routine development and testing of
4  CITRIX products.  Plaintiff performed duties almost identical in nature to sample
5  job duties listed above that were taken from CITRIX's own job descriptions.

6     46.     Plaintiff and Class Members were all paid a fixed "salary,"
7  though it is not clear if the "salary" was subject to deductions.

8     47.     Plaintiff brings this action on behalf of all persons who were,
9  are, or will be employed by CITRIX in California under the aforementioned title
10  and/or similar titles as defined in the complaint at any time within the four years
11  prior to the date of the filing of this Complaint through the date of the final
12  disposition of this action (the "California Class Period"), and who were, are, or
13  continue to be improperly misclassified as exempt from overtime pay under
14  California law.

15

16                                    **IV.**

17                          **CLASS ALLEGATIONS**

18     48.     Plaintiff brings this cause of action on behalf of himself and on
19  behalf of the CLASS of all persons similarly situated, as more fully explained
20  below and above.  This action is brought and may properly be maintained as a
21  class action pursuant to the provisions of Federal Rules of Civil Procedure
22  ("FRCP") section 23 and other applicable law pertaining to class actions.

23     49.     The proposed class Plaintiff seeks to represent is presently
24  defined as follows: all current or former employees of any of the Defendants, who
25  are, have been, or will be employed in California within the Functional Area that
26  CITRIX currently labels "Product Development/Engineering."  The CLASS
27  includes any current or former employee who primarily worked on manufacturing,

28

testing, documenting, and/or troubleshooting computer products, or similar products. The CLASS includes any previous or future name of this same Functional Area.

50.     Plaintiff also proposes the following subclass of "all current or former employees of CITRIX who performed work in California who worked on manufacturing, designing, or testing computer hardware and were paid a fixed salary" ("Computer Hardware Class").

a.     **Numerosity**: THE CLASS is so numerous that individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes and thereon alleges that it is several hundred employees or more.

b.     **Common Questions Predominate**: Common questions of law and fact exist as to all Class Members, and predominate over any questions that affect only individual members of the CLASS. The common questions of law and fact include, but are not limited to:

   i.          What were and are the policies, programs, practices, procedures and protocols of Defendants regarding Class Members' actual work and tasks, and their job duties irrespective of job titles;

   ii.          Whether Defendants are and were subject to overtime requirements contained in the California IWC Wage Orders and other California law with respect to the Class Members pursuant to Labor Code Section 510, and Wage Order, No. 4, for the period commencing four years prior to the date of the filing of the original complaint and continuing through the date of judgment;

   iii.          Whether Defendants' policy and practice of classifying Class Members as exempt from overtime entitlement under California law and Defendants' policy and practice of failing to pay overtime to the California Class Members violate applicable

provisions of California law, including applicable statutory and regulatory authority;

iv.        Whether the existing electronic records of the routine development and testing work performed can be used to re-construct a reasonable estimate of the hours worked by the employees;

v.        Whether employees working on computer hardware can qualify for the computer professional exemption which explicitly applies only to individuals working in the "computer software field;"

vi.        Whether Defendants unlawfully failed to pay overtime compensation in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq., and the California Labor Code and related regulations, Cal. Labor Code §§ 201, 202, 203, 204, 226, 510, 515.5, 1174, 1174.5, 1194, and the applicable Cal. Wage Orders;

vii.        Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding rest periods for Class Members;

viii.        Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding meal periods for Class Members;

ix.        Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding furnishing to Class Members, upon each payment of wages, itemized statements required by Labor Code section 226;

x.        Whether Defendants violated Business & Professions Code sections 17200 et seq. by their policies, programs, practices, procedures and conduct referred to in this cause of action;

xi.        Whether Defendants voluntarily obtained waivers with consent and full disclosure, and whether a written signed waiver is effective as to all future meal and rest periods;

xii.        The proper *measure of* damages sustained and the proper measure of restitution recoverable by members of the California CLASS; and

xiii.        Additional common questions of law and fact which may develop as the litigation progresses.

c.    **Typicality**: Plaintiff's claims are typical of the claims of the Class Members.  Plaintiff and other Class Members sustained losses, injuries and damages arising out of the Defendants' common policies, programs, practices, procedures, and course of conduct referred to in each cause of action and throughout this Complaint, which were applied uniformly to Class Members as well as Plaintiff.  Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were suffered by the other Class Members as well as Plaintiff. CITRIX has a companywide policy of using classifying the Class Members as "exempt" from overtime so that they could be used as free labor for work past 40 hours in a week. CITRIX had a companywide policy that they would overwork the Class Members in order to meet production deadlines and budgets.  That is, when CITRIX would get behind the development cycle, they would simply require Plaintiff and Class Members to work more hours without any additional pay.  This policy affect Plaintiff and Class Members equally, as CITRIX was constantly putting pressure on the development teams to ship their products. The records of the work performed, including the project plans, defect logs, version control logs, and testing logs, can all be used in a substantially similar fashion to determine both the hours worked and the job duties.  The records will show that the actual job duties of the class were substantially the same.

d.    **Adequacy**: Plaintiff and his counsel will fairly and adequately protect the interests of the Class Members.  Plaintiff has no interest that is adverse to the interests of the other Class Members.

1    e.   **Superiority**: A class action is superior to other available means for

2  the fair and efficient adjudication of this controversy.  Individual joinder of all

3  Class Members is impractical.  Class action treatment will permit a large number

4  of similarly situated persons to prosecute their common claims in a single forum

5  simultaneously, efficiently, and without the unnecessary duplication of effort and

6  expense that numerous individual actions engender.  Also, because the losses,

7  injuries and damages suffered by each of the individual Class Members are small

8  in the sense pertinent to class action analysis, the expense and burden of individual

9  litigation would make it extremely difficult or impossible for the individual Class

10  Members to redress the wrongs done to them.  On the other hand, important public

11  interests will be served by addressing the matter as a class action.  The cost to the

12  court system and the public of adjudication of individual litigation and claims

13  would be substantial, and substantially more than if the claims are treated as class

14  action.  Individual litigation and claims would also present the potential for

15  inconsistent or contradictory results. The class action is also superior to individual

16  actions because CITRIX has already stated that it intends to say that some

17  positions were more senior than other positions and were thus exempt.  On an

18  individual basis, this would allow CITRIX to claim that whoever the individual

19  was who was suing at the time was the "senior" individual and that it was only the

20  other individuals who were not bringing claims that were the "code monkeys."

21  However, as a class, CITRIX cannot claim that all the developers and tester were

22  "senior."  Ultimately, someone had to do the routine work.  The Class Action is the

23  best method of classifying and determining who was performing this routine work.

24    f.   **Public Policy Considerations**: Defendants, such as CITRIX,

25  routinely violate wage and hour laws.  Their employees are often afraid to assert

26  their rights out of fear of direct or indirect retaliation.  Their former employees are

27  fearful of bringing claims because doing so can harm their employment and future

28

employment and future efforts to secure employment.  This reality is of particular concern in the high technology industry where employees are misled or are misinformed about the practical consequence of filing individualized claims.  In recent lawsuits, Plaintiff's counsel surveyed a broad spectrum of Silicon Valley employees and confirmed a strong fear of retaliation in high-tech companies.  The surveys uncovered an overwhelming resistance by high tech employees to assert claims for misclassification (primarily, for fear of being "black-listed").  However, the same individuals were willing to assist litigation when a colleague asserted typical claims, such as overtime.  Class actions provide Class Members who are not named in the complaint a degree of anonymity that allows for vindication of their rights while eliminating these risks, or at least enormously reducing them. This dynamic is particularly true in the high-tech industry where the perception of retaliation is measured against the cost of obtaining a bona fide professional degree in a bona fide professional position.  The risk of litigation-related consequences to prospective employment virtually assures defendants in Silicon Valley a safe-haven to violate California's overtime laws.

## V.

## CAUSES OF ACTION

### First Cause of Action
*Failure to Pay Overtime Wages [Labor Code §1194]*
(Against each Defendant)

51.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

52.     Throughout the period applicable to this cause of action, software engineers, and similarly situated titles, as more fully described above, Plaintiff, and the proposed Class Members worked in excess of forty (40) hours per

week and/or in excess of excess of eight (8) hours per day more than 50% of the time in non-exempt primary duties lacking the requisite discretion and independent judgment in matters of significance.

53.     Throughout the period applicable to this cause of action, Defendants did not pay Plaintiff or Class Members at the required overtime rates for the work described in the preceding paragraphs.  Pursuant to California Labor Code sections 1194 and 1198 and IWC Wage Order 4-2001, the Plaintiff and the CLASS seek the payment of all overtime compensation which they earned and accrued after four (4) years prior to the filing of the Complaint, according to proof.

54.     Pursuant to California Labor Code section 1194, Plaintiff and the CLASS are entitled to recover unpaid overtime compensation, and other unpaid wages, plus interest, plus attorneys' fees and costs.

55.     As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, the California Plaintiff and the California Class Members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

56.     Plaintiff worked between 50 and 60 hours a week and has unpaid overtime in excess of $75,000.

57.     WHEREFORE, Plaintiff and the CLASS he seeks to represent request relief as described herein and below.

### Second Cause of Action
*Failure to Timely Pay Wages at Separation*
(Against each Defendant)

58.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

59.     Plaintiff and many of the other Class Members quit or were discharged from their employment within the statute of limitations period applicable to this cause of action.  As of the filing of this Complaint, Defendants failed to timely pay wages due, and Plaintiff and Class Members are owed penalties pursuant to Labor Code sections 201, 202, 203.

60.     Defendants failed to pay said employees, without abatement, all wages (as defined by applicable California law) within the time required by applicable California law.  Among other things, these employees were never paid any of the overtime compensation referred to in this Complaint, nor were they paid the other unpaid wages referred to in this Complaint.  Defendants' failure to pay said wages within the required time was willful within the meaning of Labor Code section 203.

61.     Therefore, each of these employees is entitled to one day's wages for each day he or she was not timely paid all said wages due, up to a maximum of thirty days' wages for each employee.  Because none of said employees was ever paid the overtime wages to which he/she was entitled, and was never paid other unpaid wages referred to in this Complaint, each of said employees is entitled to thirty days' wages.

62.     WHEREFORE, Plaintiff and the CLASS he seeks to represent request relief as described herein and below.

### Third Cause of Action

*Failure to Furnish Itemized Wage Statements [Labor Code §226(a)]*
(Against CITRIX)

63.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

64.     Throughout the period applicable to this cause of action, Defendants intentionally failed to furnish to Plaintiff and the Class Members, upon each payment of wages, itemized statements accurately showing, among other

1   matters: total hours worked, the applicable hourly rates in effect during the pay

2   period, and the corresponding number of hours worked at each hourly rate.

3       65.     Plaintiff and the Class Members were damaged by these

4   failures because, among other things, the failures led them to believe that they were

5   not entitled to be paid overtime, even though they were so entitled, and because the

6   failures hindered them from determining the amounts of overtime wages owed to

7   them.

8       66.     Plaintiff and class Members are also damaged because at best

9   that can reconstruct a reasonable estimate of the hours they worked using

10  electronic records.  For any time the reasonable estimate differs from the true

11  actual number of hours worked, Plaintiffs and Class Members will suffer injury in

12  not receiving full compensation.

13      67.     CITRIX deliberately implemented this policy of not tracking

14  hours because it knows that even in lawsuit, the Plaintiff has to reconstruct the

15  hours worked using various records.  These records will never be capable of

16  capturing 100% of the time worked.  As such, CITRIX implemented this

17  companywide policy to save money on not paying overtime to employees and even

18  if they did sue, CITRIX would still not have to pay the employee for all the

19  overtime worked because the reconstructed hours would miss some work that was

20  not documented in any electronic system and thus not verifiable or provable in

21  court.

22      68.     Plaintiff and the Class Members are entitled to the amounts

23  provided for in Labor Code section 226(e), plus costs and attorneys' fees.

24      69.     WHEREFORE, Plaintiff and the CLASS he seeks to represent

25  request relief as described herein and below.

26

27

28

### Fourth Cause of Action
*Violation of Unfair Competition Law*
(Against CITRIX)

70.     Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

71.     By requiring Plaintiff and members of the Class he seeks to represent to work for four (4) hours or a major fraction thereof without a rest period of at least (10) minutes, and failing to provide appropriate compensation in lieu thereof, as alleged above, Defendants willfully violated the provisions of Labor Code sections 226.7 and IWC Wage Order Nos. 4-2000, and 4-2001. Plaintiff and the Class he seeks to represent did not willfully waive, through mutual consent with Defendants, such rest periods. Plaintiff and the Class members are entitled to an hour of pay for each day that Defendant failed to properly provide one or more rest periods as set forth in the IWC wage orders, in an amount according to proof. Pursuant to Labor Code section 226.7, Plaintiff and the Class Members seek the restitution of all rest period compensation which they are owed according to proof.

72.     By requiring Plaintiff and members of the CLASS to work periods exceeding five (5) hours without an uninterrupted, off duty thirty (30) minute meal periods and to work periods exceeding ten (10) hours without a second uninterrupted, off duty thirty (30) minute meal period and not compensating one hour of pay at their regular rate of compensation for each such occurrence, as alleged above, Defendant willfully violated the provisions of Labor Code sections 226.7, 512 and IWC Wage Orders Nos. 4-1998, 4-2000, and 4-2001. Pursuant to Labor Code sections 226.7 and 512, the Class Members seek the restitution of all meal period compensation which they are owed, according to proof.

73.     . CITRIX has a policy of companywide policy of working the Class Members essentially non-stop during "crunch time" – or times close to the

1  completion of a project.  During this time, it was impossible for Class Members to
2  take meal breaks or rest breaks even though they were working 10-12 hours in the
3  day.

4          74.          Plaintiff brings this action on behalf of each and all members of
5  the general public, including the Class Members and Plaintiff himself, pursuant to
6  Business and Professions Code sections 17200 *et seq.*  Defendants' conduct
7  alleged above constitutes unlawful business acts and practices in violation of
8  Business & Professions Code sections 17200 *et seq.*  Defendants engaged in unfair
9  competition in violation of the UCL by violating, *inter alia,* each of the following
10 laws:  each of these violations constitutes an independent and separate violation of
11 the UCL:

12      1.                      California applicable Wage Orders
13      2.                      California Labor Code § 1194;
14      3.                      California Labor Code §§ 201, 202, 203, 204, and 226;
15      4.                      California Labor Code § 512;
16      5.                      California Labor Code § 515.5
17      6.                      California Labor Code §§ 1174 and 1174.5; and
18      7.                      California Labor Code § 510.

19         75.          Defendants' course of conduct, acts, and practices in violation
20 of the California laws mentioned in the above paragraph constitute a separate and
21 independent violation of the UCL.  Defendants' conduct described herein violates
22 the policy or spirit of such laws or otherwise significantly threatens or harms
23 competition.  The harm to Plaintiff and the Class Members in being wrongfully
24 denied lawfully earned wages outweighs the utility, if any, of Defendants' policies
25 or practices and, therefore, Defendants' actions described herein constitute an
26 unfair business practice or act within the meaning of the UCL.

27

28

76.     The unlawful and unfair business practices and acts of Defendants, described above, have injured the California Class Members in that they were wrongfully denied the payment of earned overtime wages.

77.     The California Plaintiff, on behalf of himself and the CLASS, seeks restitution in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day and such other legal and equitable relief from Defendants' unlawful and willful conduct a the Court deems just and proper.

78.     Pursuant to Business and Professions Code sections 17200 *et seq.* for the statute of limitations period covered by this cause of action, Plaintiff and the Class Members, are entitled to restitution for at least the following:  the unpaid overtime earnings and other unpaid earnings withheld and retained by Defendants referred to above.

79.     Plaintiff and the Class Members and the general public are also entitled to permanent injunctive and declaratory relief prohibiting CITRIX from engaging in the violations and other misconduct referred to above.

80.     Defendants are also liable to pay attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable law, and costs.  The Plaintiff, on behalf of himself and Class Members, also seeks recovery of attorneys' fees and costs of this action to be paid by CITRIX, as provided by the UCL and California Labor Code § 1194.

81.     WHEREFORE, Plaintiff and the **CLASS** he seeks to represent request relief as described herein and below.

## VI.

## PRAYER FOR RELIEF

FIRST AMENDED CLASS ACTION COMPLAINT

WHEREFORE, Plaintiff on behalf of himself and all members of THE CLASS, pray for relief as follows:

82. That the Court determine that this action may be maintained as a class action;

83. That Plaintiff be appointed the representative of THE CLASS;

84. That the attorneys of record for Plaintiff whose names appear in this Complaint be appointed Class counsel;

85. For unpaid wages at overtime rates for all overtime work and unpaid wages for all work for which they were not paid;

86. For such general and special damages as may be appropriate;

87. For waiting time penalties and civil penalties for all Class Members no longer in Defendants' employ at the time of Judgment;

88. For pre-judgment interest;

89. For the amounts provided for in Labor Code §§ 226(b), 226.7,

90. For restitution as described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

91. For permanent injunctive and declaratory relief described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above.

92. Attorney's fees and costs of suit, including expert fees pursuant to Ca. Lab. Code § 1194, and FRCP section 54(d);

93. Such other injunctive and equitable relief as the Court may deem proper.

DATED:  September 20, 2011

**JOSE GARAY, *APLC***

**HAMNER LAW OFFICES, LP**

**LAW OFFICES OF MICHAEL L. TRACY**

By:  Michael L. Tracy, Esq., Co-Counsel for Plaintiff, Yuckming Chiu, on behalf of himself and all others similarly situated.

1

## Demand for Jury Trial

2    Plaintiff demands a jury trial.

3

4    **DATED:**  September 20, 2011                    **JOSE GARAY,** *APLC*

5                                                                      **HAMNER LAW OFFICES, LP**

6                                                                      **LAW OFFICES OF MICHAEL L.**

7                                                                      **TRACY**

8

9    _____

10                                                          By:  Michael L. Tracy, Esq., Co-Counsel for

11                                                          Plaintiff, Yuckming Chiu, on behalf of

12                                                          himself and all others similarly situated.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 years and not a party to this action. My business address is 2030 Main Street, Suite 1300, Irvine, CA 92614.

On September 21, 2011, I served the following document(s): **FIRST AMENDED CLASS ACTION COMPLAINT FOR: Failure to Pay Overtime Wages (Labor Code §§ 204, 510, 1194);**
   1. **Failure to Timely Pay Wages at Separation (Labor Code §§ 201-203);**
   2. **Failure to Furnish Itemized Wage Statements (Labor Code § 226);**
   3. **Unfair Business Practices (Bus. & Prof. Code §§ 17200 et seq.)**
      **DEMAND FOR JURY TRIAL** on the interested parties in this action as follows and by the method listed below:

Aaron Lubeley
alubeley@seyfarth.com
Seyfarth Shaw LLP
333 S Hope St. STE 3900
Los Angeles, CA 90071

**(Service by mail)** I caused such envelope, with postage thereon, fully prepaid, to be placed for deposit at 2030 Main Street, Suite 1300, Irvine, CA 92614, in the United States Postal Service. I am familiar with the regular mail collection and processing practices of the Law Offices of Michael Tracy that the mail would be deposited with the United States Postal Service that same day in the ordinary course of business, and that the envelope was sealed and deposited for collection and mailing on the above date following ordinary business practices to the person listed above.

| SEYFARTH SHAW LLP | Dennis S. Hyun |
|---|---|
| Kenneth D. Sulzer | dhyun@seyfarth.com |
| ksulzer@seyfarth.com | 333 South Hope Street, Suite 3900 |
| 2029 Century Park East, Suite 3500 | Los Angeles, California 90071-1406 |
| Los Angeles, California 90067 | |

**(Via E-Mail)** By Emailing copies to the person(s) listed above.

**(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed September 21, 2011 at Irvine, California.

_____
VIRGINIA TOMLINSON